IN THE MATTER OF: DR. JOHN KOZY, A MEMBER OF THE FACULTY OF THE
DEPARTMENT OF PHILOSOPHY, EAST CAROLINA UNIVERSITY

No. 883SC131

(Filed 20 September 1988)

**Schools § 13.2— dismissal of male teacher—misconduct toward female students—
substantial evidence**

In review of the whole record there was substantial evidence to support
the trial court's decision that ECU acted properly in dismissing petitioner as a
faculty member because of misconduct of such a nature as to indicate that he
was unfit to continue as a member of the faculty where such evidence tended
to show that petitioner sexually harassed female students by putting his arms
around their shoulders and ribs, squeezing one's shoulder, and suggesting to
one student that he would give her an A in exchange for sexual favors.

APPEAL by petitioner from *Tillery, Judge.* Order entered in
open court on 5 November 1987 and filed on 20 January 1988 in
Superior Court, PITT County. Heard in the Court of Appeals 8
June 1988.

*Attorney General Lacy H. Thornburg, by Assistant Attorney
General Thomas J. Ziko, for respondent-appellee East Carolina
University.*

*Ward and Smith, P.A., by Robert D. Rouse, Jr., for petition-
er-appellant.*

JOHNSON, Judge.

This is an appeal by petitioner, Dr. John Kozy, from an order
affirming the final agency decision discharging him as a faculty
member of East Carolina University.

By letter dated 7 October 1986, the Chancellor of East Caro-
lina University notified petitioner of the intent of the University
to discharge petitioner from employment. At the time, petitioner
was a tenured faculty member of the University's Department of
Philosophy. Upon request by petitioner, the Chancellor provided
him with a "Specification of Reasons for Intent to Discharge," in a
letter dated 24 October 1986. Based upon the tenure policies and
regulations, the letter alleged that the reason for petitioner's
discharge was misconduct of such a nature as to indicate that he
was unfit to continue as a member of the faculty. Of the ten

specifications, nine involved petitioner's alleged sexual harassment of female students in his classes.

Petitioner requested a hearing before a due process committee, which conducted a hearing, and made findings and conclusions as to the specifications alleged. A majority of the committee found against petitioner on six of the ten specifications, and concluded that he should not be retained as a member of the faculty. A minority conclusion was filed with the committee's report which stated that: "[d]ismissing [petitioner] at this time is not warranted and sanctions other than termination of employment should be explored seriously and invoked."

By letter dated 23 April 1987, the Chancellor notified petitioner that he was discharged. Petitioner appealed to the board of trustees of East Carolina University. The board determined, by majority vote, that a preponderance of the evidence with respect to four of the original ten specifications reasonably supported the Chancellor's action terminating petitioner's employment.

On 2 July 1987, Dr. Kozy petitioned the Board of Governors of the University of North Carolina to review the decision of the board of trustees of East Carolina University on the ground that the decision to discharge him violated several specific provisions of the code of The University of North Carolina. On 31 July 1987, the Board of Governors allowed Dr. Kozy's petition for review but limited the scope of the review to whether the petitioner had been denied due process.

On 11 September 1987, after considering the record, briefs and arguments, the committee on personnel and tenure of the Board of Governors submitted its report to the Board of Governors. The committee report concluded that petitioner failed to demonstrate that ECU had violated any of his due process rights under the Code or the Constitution. The Board of Governors approved the report which denied Dr. Kozy's petition for reversal.

On 2 October 1987, Dr. Kozy filed a petition for judicial review pursuant to G.S. sec. 150B-43. Petitioner alleged, *inter alia*, that his rights had been prejudiced because ECU's decision to discharge him from his employment was not supported by substantial evidence in the administrative record.

On 5 November 1987, after reviewing the decisions of the various boards, the petition, the record, the briefs and arguments, the trial court determined that the petitioner's substantial rights had not been prejudiced by ECU's decision to discharge him from the faculty and affirmed the final agency decision. From entry of that order, petitioner appeals.

Petitioner brings forth two arguments for this Court's review. For the following reasons, we affirm.

First, petitioner contends that his substantial rights were prejudiced because the findings, inferences and conclusions adverse to him were not supported by substantial evidence. This Court's review, pursuant to G.S. sec. 150B-52, of the trial court's order affirming the final agency's decision, is the same in scope as it is for other civil cases. Thus, we must determine whether the trial court committed any errors of law which would be based upon its failure to properly apply the review standard articulated in G.S. sec. 150B-51. *American Nat'l Ins. Co. v. Ingram*, 63 N.C. App. 38, 303 S.E. 2d 649, *cert. denied*, 309 N.C. 819, 310 S.E. 2d 348 (1983).

An agency decision may be reversed or modified by the trial court if it is "[u]nsupported by substantial evidence : . . in view of the entire record as submitted." G.S. sec. 150B-51(5).

> This standard of review is known as the 'whole record' test. When, in applying this test, reasonable but conflicting views emerge from the evidence, this Court cannot replace the agency's judgment with its own. It must, however, 'take into account whatever in the record fairly detracts from the weight' of the evidence which supports the decision. Ultimately it must determine whether the decision has a rational basis in the evidence.

*General Motors Corp v. Kinlaw*, 78 N.C. App. 521, 523, 338 S.E. 2d 114, 117 (1985) (citations omitted).

We shall consider the trial court's decision in light of this standard of review. Under the applicable provisions of the university code, a tenured professor could only be discharged from employment or diminished in rank "for reasons of incompetence, neglect of duty, or *misconduct of such a nature as to indicate that the individual is unfit to continue as a member of the faculty.*"

Petitioner was discharged for "unfitness" because he had allegedly sexually harassed three female students on separate occasions. According to ECU's sexual harassment policy, employees are prohibited from:

(a) making unwelcomed sexual advances or requests for sexual favors or other verbal or physical conduct of a sexual nature a condition of a student's grade, progress, or recommendation or,

(b) creating an intimidating, hostile or offensive learning environment by such conduct.

Under its policy, the university defines sexual harassment as "deliberate, unsolicited, unwelcomed verbal and/or physical conduct of a sexual nature or with sexual implications. The definition does not include personal compliments welcomed by the recipient or relationships which are freely entered into by both parties."

Based upon the foregoing rules and policies, the following specifications were found to be reasonably supported by the evidence and therefore adequate grounds for petitioner's dismissal. The four specifications which follow are those which were first enumerated in the Chancellor's letter of dismissal, and were later adopted by the board of trustees of East Carolina University as adequate grounds for dismissal.

### Specifications

4. In July 1983, you harassed Daisy Morales, a female student in your class, by repeatedly putting your arms around her shoulder during class and during examination and by leaning against her and touching parts of her arms or shoulders and by asking her if she needed mouth-to-mouth resuscitation, when she coughed during a lecture.

5. In March 1984, you harassed Melissa Reed, a female student in your class, by going to her seat and squeezing her shoulder.

8. During the 1986 summer session, in your PHIL 1500 course, you harassed Constance Jones, a female student enrolled in the class, while she was taking a make-up test, by putting your arms around her shoulder and ribs which prompted her to insist that you leave her alone.

9. Later in the 1986 summer session, you harassed Constance Jones by suggesting that she could remedy her poor performance in PHIL 1500 and attain an A if she worked alone with you and was 'cooperative.' Those comments were intended to mean and were interpreted to mean that she would receive an A in exchange for sexual favors.

.Petitioner contends that the specifications do not provide a rational basis for the conclusions reached by the due process committee and board of trustees. Applying the "whole record test," we believe that each specification was supported by substantial evidence which provided a rational basis for the conclusion reached by all the reviewing agencies and the trial court.

As for Specification 4, the evidence reveals that during an examination, Claudia Williams observed petitioner fondling a necklace Daisy Morales was wearing around her neck which was hanging between her breasts. Petitioner admitted that he examined the necklace, but testified that he did not believe his actions were intimidating or offensive. Ms. Morales wrote petitioner a letter to complain about his conduct on this occasion. She also complained in the letter about petitioner repeatedly putting his arms around her and leaning against her while examining her classwork. Petitioner testified that he had a habit of frequently placing his arms around students but did not feel that his behavior was offensive or intimidating.

The committee relied upon this evidence to find that petitioner's behavior "did create an offensive and intimidating classroom environment for Ms. Morales."

The board of trustees concurred with this finding and concluded that it reasonably supported the Chancellor's conclusion that petitioner was unfit to teach. Although there may have been conflicting views, the credibility of the witnesses and the resolution of conflicts in their testimony is a matter for the agency, not a reviewing court. *In re Dailey v. North Carolina State Bd. of Dental Examiners*, 60 N.C. App. 441, 299 S.E. 2d 473, *rev'd on other grounds*, 309 N.C. 710, 309 S.E. 2d 219 (1983). Consequently, the findings of fact found by the respective committee and board were supported by substantial evidence and amply supported the conclusions of law and the ultimate decision reached by the trial court.

In regard to Specification 5, the evidence revealed that on two separate occasions petitioner squeezed the shoulder of Melissa Reed during class. Ms. Reed was taking an examination during one of those occasions. Ms. Reed, by letter, informed the director of the equal opportunity programs, that petitioner's behavior was offensive and objectionable to her. Petitioner was given a copy of the complaint. Petitioner testified that he had squeezed her shoulders but he "had perfectly reasonable explanations for those events and did not take the matter seriously."

The committee found that Ms. Reed did find this contact objectionable and offensive, but was not certain that the conduct fell within the scope of ECU's sexual harassment policy. The board of trustees concurred in the committee's finding but held that the conduct reasonably supported the Chancellor's conclusion that petitioner had engaged in misconduct on these occasions. Although there were conflicting views as to whether this conduct was sexual in nature, the credibility of the witnesses is a matter for the agency and not the reviewing court. *Dailey, supra.* As a result, the findings of fact were supported by substantial evidence, which in turn amply support the conclusions of law.

In review of Specification 8, Constance Jones testified that she was alone in a supply room working on a make-up exam given by petitioner, when petitioner entered the room. As she continued to work, petitioner came closer and closer to her until he was directly behind her. Petitioner then leaned over her and placed one hand on her shoulder and the other hand on her rib cage. She testified that this contact made her uncomfortable and required her to ask petitioner to leave.

The incident described in Specification 9 occurred after Ms. Jones had completed the final exam. Petitioner testified that he had agreed to give her a grade of "I" (incomplete), but asked her to take the final exam on the chance that she might pass. Ms. Jones testified that after she had completed the exam, she inquired whether the offer to give her an incomplete was still available. Petitioner indicated that it was. She then asked whether any tutors would be available for the fall session and, if so, whether she could arrange to employ one. Petitioner responded that he was almost sure there would be no tutors available for the fall. She testified that she considered this statement to be in

contradiction to his earlier assertions. She also testified that petitioner then stated, "well, if we work very closely together and you are very cooperative you won't have any problem making an A." Ms. Jones testified that she felt this statement was an offer to give her an "A" in exchange for sexual favors, based upon petitioner's tone of voice and the way he looked at her when he made the statement.

The committee determined that this conduct by petitioner created an intimidating and offensive learning environment for Ms. Jones. The board concurred in this finding and held that petitioner's conduct on these occasions reasonably supported the Chancellor's conclusion.

We believe the record contains ample evidence to support these findings and conclusions. We note that in 1985, petitioner was warned to refrain from any type of touching or contact with his students, and petitioner testified that he agreed to refrain from such contact. The contact alleged in Specifications 8 and 9 occurred in 1986. Although Ms. Jones did not immediately file a complaint when these matters occurred, she did eventually file after conversing with faculty members.

Finally, petitioner alleges that the trial court erroneously affirmed the decision of ECU to discharge him. We disagree. This Court has found no errors of law in the trial court's order affirming the agency's decision. We find that the "whole record test" was properly applied.

Accordingly, for the aforementioned reasons, the judgment of the trial court is

Affirmed.

Judges PARKER and COZORT concur.