ARMANDO LOUIS AMANINI, Petitioner-Appellant v. N.C. DEPARTMENT OF
HUMAN RESOURCES, N.C. SPECIAL CARE CENTER, Respondent-Appellee

No. 927SC500

(Filed 17 May 1994)

1. **Administrative Law and Procedure § 72 (NCI4th)— administrative agency decisions—appellate review—standard of review**

Although there are statutory provisions establishing judicial review of administrative agency decisions, no section of the Administrative Procedure Act delineates the procedures to be followed upon appellate review. Appellate courts have agreed that characterization of the alleged error on appeal dictates the method or scope of review, with more than one method being used if required by the issues, but the manner of review is not governed merely by the label an appellant places upon an assignment of error and the appellate court need only consider those grounds for reversal or modification argued by the petitioner before the superior court and assigned as error on appeal. Separate panels of the Court of Appeals have reached differing conclusions concerning the proper standard of appellate review; this panel determined that the proper standard was to examine the trial court's order for error of law rather than to apply the same standard as the trial court and to examine the evidence. N.C.G.S. § 150B-52.

**Am Jur 2d, Administrative Law §§ 769-774.**

2. **Public Officers and Employees § 67 (NCI4th)— firing of state employee—just cause—job performance rather than personal misconduct—no warnings**

The superior court erred by affirming the State Personnel Commission's decision to terminate petitioner where petitioner worked as a charge nurse at the N.C. Special Care Center; petitioner began his thirty-minute meal break around 6:00 p.m.; he went outside the facility to meet his fiancee, who was waiting in her automobile, without signing out or notifying other personnel; an argument ensued and petitioner fell from the vehicle onto the paved driveway; petitioner's fiancee drove away; petitioner, who had suffered vertebral fractures, crawled to a nearby trailer park for assistance; and petitioner was dismissed for vacating his nurses' station without notifying his supervisor or signing out and for departing the grounds. Ac-

cording to Commission regulations, just cause has been divided into two categories, unsatisfactory job performance and personal misconduct, with certain warnings required before a permanent state employee may be terminated on the grounds of unsatisfactory job performance, but none for dismissals based on an employee's personal misconduct. Petitioner's alleged violations properly fall within the contemplation of the job performance category and the Commission erred to the extent that its conclusion of just cause was based upon its characterization of petitioner's actions as personal misconduct. Having proceeded on the theory that the conduct furnishing the grounds for termination fell under the category of personal misconduct, DHR cannot now prevail by arguing that it could have proceeded on unsatisfactory job performance and, assuming that the argument should be considered, there is no evidence to establish the warnings necessary to precede dismissal for unsatisfactory job performance.

**Am Jur 2d, Civil Service §§ 52 et seq.**

Appeal by petitioner from order entered 7 February 1992 by Judge Herbert O. Phillips, III in Wilson County Superior Court. Heard in the Court of Appeals 16 April 1993.

*Eastern Carolina Legal Services, Inc., by Wesley Abney, for petitioner-appellant.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General John R. Corne, for respondent-appellee.*

JOHN, Judge.

Petitioner Armando Louis Amanini (petitioner) appeals the superior court's order affirming the decision and order of the State Personnel Commission which upheld his termination from employment with respondent N.C. Special Care Center (the Center).

Relevant background information includes the following: In 1984, respondent Department of Human Resources (DHR) hired petitioner to work as a registered nurse at the Center. The Center is a licensed "skilled" and "intermediate" nursing care facility, with beds accommodating 208 patients, each of whom has mental and physical disabilities and requires around-the-clock care. Petitioner was employed at the Center continuously from 28 July 1984 until 23 March 1989.

AMANINI v. N.C. DEPT. OF HUMAN RESOURCES

[114 N.C. App. 668 (1994)]

The events of the evening of 23 March 1989, ultimately resulting in petitioner's dismissal, are essentially uncontroverted. On that date, petitioner held the position of "lead nurse" or "charge nurse" for the facility's fifth floor during the second shift (3:00 p.m. until 11:30 p.m.). In that capacity, he was responsible for the welfare of forty-seven patients and directly supervised the health care technicians (HCTs) assigned to that floor.

Around 6:00 p.m., petitioner began his allocated thirty-minute meal break. Shortly thereafter, without notifying any other personnel or signing out in the lobby of the building on the sheet for his assigned floor, he went outside the facility to meet his fiancee, Edna Crespo, who was waiting there for him in her automobile. An argument ensued between the two, and petitioner got into the passenger seat of her car to continue the discussion. As the couple drove around the grounds, Crespo accelerated suddenly. At that point, petitioner's hand forcefully struck the passenger side door which consequently swung open. Petitioner fell from the vehicle onto the paved driveway, and Crespo drove away from the scene. Petitioner, later discovered to have suffered vertebral fractures from the fall, then crawled toward a nearby trailer park for assistance. His supervisor Ann Boykin was apprised of his predicament by telephone at about 6:40 p.m. In the interim, a family member of one of the fifth floor patients had come to the facility to speak with the charge nurse on duty. An HCT, unable to locate petitioner, had informed Boykin of his absence.

On 10 April 1989, petitioner was notified of his dismissal from employment by the Center in a letter sent him by Director of Nursing Dale Hilburn. The letter indicated petitioner's dismissal was due to "misconduct, which is a personal conduct issue" arising out of the 23 March incident, primarily: 1) vacating his fifth floor nurses' station without notifying his supervisor or signing out, thereby abandoning his patients and violating Center policy; and 2) departing the grounds.

After his dismissal was upheld by DHR in a letter dated 26 July 1989, petitioner sought a contested case hearing with the Office of Administrative Hearings. Following a 23 April 1990 hearing, the administrative law judge assigned to the case issued a decision recommending that petitioner's dismissal be "upheld on the basis of just cause." The full State Personnel Commission adopted *in toto* the recommended decision of the administrative law judge by order entered 11 February 1991.

AMANINI v. N.C. DEPT. OF HUMAN RESOURCES

[114 N.C. App. 668 (1994)]

Pertinent findings of fact adopted by the Commission are as follows:

9. The Respondent enacted a written policy effective February 1984 concerning meal breaks. The policy states, in part, that "[e]mployees have thirty minutes for meals including travel time" and "employees leaving the facility at meal break shall sign-out and sign-in upon return."

10. The Respondent enacted a written policy effective April 1986 concerning sign in — sign out procedures. The policy states, in part, that "[w]hen leaving the facility, for any reason, each individual will be expected to 'sign out', upon return, the individual is to 'sign in' on the same sheet" and "each employee is to sign in or out on the clipboard sheet provided for each area to which assigned."

. . . .

18. The Petitioner did not sign out of the Respondent facility when he left the building during his meal break to enter Crespo's vehicle.

19. The Petitioner did not inform anyone, including the Respondent's evening supervisor Anne Boykin, that he was leaving the fifth floor of the building.

20. A lead nurse has the responsibility to inform Boykin that he or she is leaving the grounds of the Respondent during a meal break. A lead nurse has the responsibility to inform a health care technician that he or she is leaving the assigned floor.

21. As a lead nurse, the Petitioner had the authority to leave the Respondent's building in order to eat on the picnic grounds without informing Boykin.

. . . .

23. The Petitioner was required to sign in and to sign out whenever he left the Respondent's grounds during his work shift.

24. The Petitioner did not intent [sic] to leave the Respondent's grounds when he entered Crespo's vehicle.

. . . .

35. The Respondent's enacted policies pertaining to meal breaks and to sign in—sign out procedures were generally followed, but not strictly enforced.

. . . .

41. The dismissal letter, signed by Hilburn, stated that the Petitioner's employment was terminated due to personal misconduct. The letter stated that the Petitioner's misconduct consisted of leaving his fifth floor nurses' station without notifying his supervisor or signing out . . . and leaving the facility grounds, thereby leaving the fifth floor patients without a licensed nurse for coverage . . . and disobeying the signing out policy.

In addition, the order of the administrative law judge contained the following conclusions of law:

3. The Petitioner violated the Respondent's policy governing absence from a floor unit by failing to inform anyone that he, as lead nurse, was leaving his assigned fifth floor area.

4. The Petitioner violated the Respondent's policy governing absence from the facility during the meal break by failing to sign out from the facility upon his departure from the building with Crespo during his dinner meal break.

5. The Petitioner violated the Respondent's policy governing sign in—sign out procedure by failing to sign out on the clip-board sheet for his assigned area upon his departure from the facility with Crespo.

6. The Petitioner did not violate the Respondent's policy governing departure from the Respondent's grounds. . . . Such an exigent circumstance in leaving the Respondent's grounds does not constitute a violation of the Respondent's policy that a lead nurse must not leave the grounds during a meal break without first informing the supervisor.

. . . .

8. The Petitioner's violations of the Respondent's policies governing absence from a floor unit, absence from the facility and sign in—sign out procedure constitute just cause for the termination of his employment by the Respondent . . . .

Petitioner thereafter sought judicial review pursuant to N.C.G.S. §§ 150B-45 (1991) and 150B-46 (1991) by means of a petition filed

11 March 1991 in Wilson County Superior Court. Included among his listed exceptions to the final agency decision was the following:

> Conclusion of Law No. 8 is also erroneous in that, even if petitioner did violate any policies of respondent, such violations are in the nature of job performance, not personal conduct. Petitioner lacks sufficient prior warnings in his record for one instance of improper job performance to constitute just cause for dismissal, under G.S. 126-35 and the rules and regulations of the Office of State Personnel.

Following a hearing held 12 August 1991 and by order filed 11 February 1992, the superior court affirmed the Commission's decision to terminate petitioner, stating:

> [I]t is found and concluded that the Decision and Order for the Full [State Personnel] Commission is supported by substantial evidence in view of the official record as a whole, and that Petitioner was properly dismissed for personal misconduct as provided by G.S. § 126-35.

I.

[1] The North Carolina Administrative Procedure Act (APA), codified at Chapter 150B of the General Statutes, governs trial and appellate court review of administrative agency decisions. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988). Following the statutory provisions establishing judicial review, *see* G.S. § 150B-45 ("person seeking review must file a petition in the . . . superior court . . . ."), and stating review by the superior court shall be conducted without a jury, *see* N.C.G.S. § 150B-50 (1991), the APA sets forth the permissible dispositions upon judicial review of a final agency decision:

> [T]he court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b) (1991).

Although the statute lists the grounds upon which the superior court may reverse or modify a final agency decision, the proper manner of review depends upon the particular issues presented on appeal. *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) (citation omitted).

If [petitioner] argues the agency's decision was based on an error of law, then "*de novo*" review is required. If, however, [petitioner] questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the "whole record" test.

*Id.* (citations omitted). "*De novo*" review requires a court to consider a question anew, as if not considered or decided by the agency. *See* Black's Law Dictionary 435 (6th ed. 1990). The "whole record" test requires the reviewing court to examine all competent evidence (the "whole record") in order to determine whether the agency decision is supported by "substantial evidence." *Rector v. N.C. Sheriffs' Educ. & Training Standards Comm.*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 616 (1991) (citation omitted).

As to appellate review of a superior court order regarding an agency decision, however, the APA simply specifies "[a] party to a review proceeding in a superior court may appeal to the appellate division from the final judgment of the superior court . . . ." N.C.G.S. § 150B-52 (1991). Moreover, unlike G.S. § 150B-51 which immediately follows the statutory provisions establishing judicial review of a final agency decision by the *superior* court, no subsequent section of the APA delineates the procedures to be followed upon *appellate* review.

In consequence of this statutory void, our appellate courts have established certain applicable principles. First, the cases agree

that characterization of the alleged error on appeal "dictates" the method or scope of review, *Brooks, Comr. of Labor v. Grading Co.*, 303 N.C. 573, 580, 281 S.E.2d 24, 29 (1981) (quoting *State ex rel. Utilities Commission v. Bird Oil Co.*, 302 N.C. 14, 21, 273 S.E.2d 232, 236 (1981)), although more than one method may be utilized "if the nature of the issues raised so requires." *McCrary*, 112 N.C. App. at 165, 435 S.E.2d at 363 (citation omitted). Next, it appears uncontroverted that the foregoing rule should not be interpreted to mean the manner of our review is governed merely by the label an appellant places upon an assignment of error; rather, we first determine the actual nature of the contended error, then proceed with an application of the proper scope of review. *See Bird Oil Co.*, 302 N.C. at 21-22, 273 S.E.2d at 236; *see also Davis v. N.C. Dept. of Human Resources*, 110 N.C. App. 730, 735, 432 S.E.2d 132, 134-35 (1993) (where position of appellant is "not clear," Court in its discretion undertakes *de novo* review of agency's conclusions of law, as well as review of "whole record" to determine whether evidence supports agency's action). Finally, the cases also consistently hold that we need consider only "those grounds for reversal or modification argued by the petitioner before the superior court, and properly assigned as error on appeal to this Court." *Professional Food Services Mgmt. v. N.C. Dept. of Admin.*, 109 N.C. App. 265, 268, 426 S.E.2d 447, 449 (1993) (citation omitted).

Separate panels of this Court, however, appear to have reached differing conclusions concerning the proper standard of appellate review. The *first* line of authority holds our review of a trial court's order under G.S. § 150B-52 "is the same as in any other civil case—consideration of whether the court committed any error of law." *McCrary*, 112 N.C. App. at 165, 435 S.E.2d at 363 (citation omitted); *see also, e.g., Sherrod v. N.C. Dept. of Human Resources*, 105 N.C. App. 526, 530, 414 S.E.2d 50, 53 (1992) (citation omitted); *In re Kozy*, 91 N.C. App. 342, 344, 371 S.E.2d 778, 779-80 (1988) (citation omitted), *disc. review denied*, 323 N.C. 704, 377 S.E.2d 225 (1989); *American Nat'l Ins. Co. v. Ingram*, 63 N.C. App. 38, 41, 303 S.E.2d 649, 651, *disc. review denied*, 309 N.C. 819, 310 S.E.2d 348 (1983). Under this approach, the appellate court examines the trial court's order for error of law. *Kozy*, 91 N.C. App. at 344, 348, 371 S.E.2d at 780, 782. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly. *See, e.g., Walker v. N.C. Dept.*

AMANINI v. N.C. DEPT. OF HUMAN RESOURCES

[114 N.C. App. 668 (1994)]

*of Human Resources,* 100 N.C. App. 498, 502, 397 S.E.2d 350, 353-54 (1990), *disc. review denied,* 328 N.C. 98, 402 S.E.2d 430 (1991); *see also Bird Oil Co.,* 302 N.C. at 20-21, 273 S.E.2d at 236 (N.C. Supreme Court, reviewing a decision of this Court, must "determine under which criterion for review the Court of Appeals [and the superior court] should have addressed [the] proceeding. Only then can [the Supreme Court] decide whether the Court of Appeals' decision was proper.").

A *second* group of cases asserts "[t]he standard of review for an appellate court in reviewing an order of the superior court affirming or reversing a decision of an administrative agency is the same as that used by the superior court" (referring to G.S. § 150B-51). *Professional Food Services,* 109 N.C. App. at 267, 426 S.E.2d at 449 (citation omitted); *see also Jarrett v. N.C. Dept. of Cultural Resources,* 101 N.C. App. 475, 478, 400 S.E.2d 66, 68 (1991) (applying § 150B-51 standard to "the present case"); *see also Savings and Loan League v. Credit Union Comm.,* 302 N.C. 458, 464, 276 S.E.2d 404, 409 (1981) (Supreme Court remarked that the Court of Appeals "recogniz[ed] that its review was governed by [then] G.S. 150A-51," but then chided this Court for "fail[ing] to specify under which of the above listed standards it reviewed the decisions of the *superior court* and the Commission." (Emphasis added). The Supreme Court thereafter began its own analysis by deciding whether the *superior court* applied the correct standard in reviewing the agency's actions. Under this second method, the appellate court examines directly the evidence presented to, as well as the decision and order of, the agency, as opposed to the decision of the superior court. *See, e.g., Jarrett,* 101 N.C. App. at 478-80, 400 S.E.2d at 68-69.

Confronted with the foregoing divergent lines of authority, we consider the former approach the proper one. Otherwise, the statutory provisions for judicial review of agency action at the trial court level would appear to lack purpose if that court's determination is to be given no consideration at the appellate level. Legislation by the General Assembly is presumed to have a purpose. *State v. White,* 101 N.C. App. 593, 605, 401 S.E.2d 106, 113 ("The legislature is presumed to have intended a purpose for each sentence and word in a particular statute, and a statute is not to be construed in a way which makes any portion of it ineffective or redundant.") (citation omitted), *disc. review denied, appeal dismissed,* 329 N.C. 275, 407 S.E.2d 852 (1991).

**AMANINI v. N.C. DEPT. OF HUMAN RESOURCES**

[114 N.C. App. 668 (1994)]

Having determined the appropriate standard of review, we turn now to petitioner's assignments of error herein.

## II.

[2] Petitioner's primary assignment of error is directed at Conclusion #8 of the administrative law judge, which provides:

> 8. The Petitioner's violations of the Respondent's policies governing absence from a floor unit, absence from the facility and sign in—sign out procedure constitute *just cause* for the termination of his employment by the Respondent . . . .

(Emphasis added).

Upon reaching the above conclusion, the administrative law judge recommended "that the Respondent's dismissal of the Petitioner from its employ be upheld *on the basis of just cause*." (Emphasis added). In adopting *in toto* the recommended decision of the administrative law judge, the full Commission ordered that "Respondent's decision to dismiss Petitoner [sic] be upheld as being for just cause." Petitioner maintains this conclusion mischaracterized his actions and is therefore "affected by error of law."

As previously indicated, when a petitioner's assignment of error correctly raises a question of law, the appropriate standard of review for the initial reviewing court to utilize is *de novo* review. *Walker*, 100 N.C. App. at 502, 397 S.E.2d at 354. In addition, where the initial reviewing court should have conducted *de novo* review, this Court will directly review the State Personnel Commission's decision under a *de novo* review standard. *McCrary*, 112 N.C. App. at 165, 435 S.E.2d at 363 (citation omitted).

However, resolving whether an assignment of error correctly asserts an agency decision is "affected by error of law" may not necessarily be a routine matter. As one commentator has suggested:

> The supposed "classical dichotomy" between the fact/law distinction in determining scope of review "is of little use as a working tool" and has been characterized as "often not an illuminating test" that is "never self-executing." One would thus not be surprised that "[w]hat one judge regards as a question of fact another thinks is a question of law."

Charles E. Daye, *North Carolina's New Administrative Procedure Act: An Interpretative Analysis*, 53 N.C.L. Rev. 833, 915 (1975)

(alteration in original) (citations omitted). *See also, e.g., Davis,* 110 N.C. App. at 735, 432 S.E.2d at 134-35.

Nonetheless, we consider petitioner's argument that his termination by the Commission was not for "just cause" based upon personal misconduct to have raised a question of law. *See Employment Security Com. v. Kermon,* 232 N.C. 342, 345, 60 S.E.2d 580, 583 (1950) (" '[T]he legal effect of evidence and the ultimate conclusions drawn by an administrative tribunal from the facts . . . are questions of law . . . .' ") (quoting 42 Am. Jur. § 214). The rules, regulations and policies promulgated by the Commission have the force and effect of law. *See, e.g., N.C. Dept. of Justice v. Eaker,* 90 N.C. App. 30, 37-38, 367 S.E.2d 392, 398 (citations omitted), *disc. review denied,* 322 N.C. 836, 371 S.E.2d 279 (1988), *overruled on other grounds by Batten v. N.C. Dept of Correction,* 326 N.C. 338, 343, 389 S.E.2d 35, 39 (1990). Moreover, "[i]ncorrect statutory interpretation by an agency constitutes an error of law" under G.S. § 150B-51(b)(4). *Brooks, Com'r of Labor v. Rebarco, Inc.,* 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988) (citation omitted). Thus, when the issue on appeal is whether a state agency erred in interpreting a statutory term, "an appellate court may substitute its own judgment [for that of the agency] and employ *de novo* review." *Chesapeake Microfilm v. N.C. Dept. of E.H.N.R.,* 111 N.C. App. 737, 744, 434 S.E.2d 218, 221 (1993) (citation omitted), *disc. review denied, appeal dismissed,* 335 N.C. 768, 442 S.E.2d 511 (1994). Accordingly, we consider *de novo* whether the Commission erred in reaching its conclusion that "just cause" existed for petitioner's termination.

N.C.G.S. § 126-35 (1993) prohibits the discharge of permanent employees subject to the State Personnel Act except for "just cause." Although "just cause" is not defined in the statute, this Court has held the words are to be given their ordinary meaning. *Wiggins v. N.C. Dept. of Human Resources,* 105 N.C. App. 302, 306, 413 S.E.2d 3, 5 (1992) (citation omitted). In Webster's New International Dictionary, "cause" is defined as a "good or adequate reason," and "just" as "reasonable" or "having a basis in fact." *See* Webster's New International Dictionary 356, 1228 (3d ed. 1968). Definition of the term is further enhanced by reference to certain rules and policies promulgated by the State Personnel Commission concerning discipline and dismissal of employees. Having been promulgated pursuant to statutory authority, *see* N.C.G.S. § 126-4(7a) (1993), these enactments also have "the effect of law." *See, e.g., Harding v. N.C. Dept. of Correction,* 106 N.C. App. 350, 355, 416

S.E.2d 587, 589-90 (citations omitted), *disc. review denied*, 332 N.C. 147, 419 S.E.2d 567 (1992). Significantly, according to the Commission's regulations, "just cause" for dismissal has been divided into two basic categories—unsatisfactory job performance and personal conduct (misconduct) detrimental to State service. *See* State Personnel Manual, Sec. 9, at 2 (the Manual); N.C. Admin. Code tit. 25, O1J .0604 (1984) (amended March 1994) (the Code); *see also Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 343, 342 S.E.2d 914, 918 (citation omitted), *disc. review denied*, 318 N.C. 507, 349 S.E.2d 862 (1986).

The Manual and the Code distinguish between the two categories of "just cause" as follows:

The JOB PERFORMANCE category is intended to be used in addressing performance-related inadequacies for which a reasonable person would expect to be notified of and allowed an opportunity to improve. PERSONAL CONDUCT discipline is intended to be imposed for those actions for which no reasonable person could, or should, expect to receive prior warnings.

Manual, Sec. 9, at 3; 25 N.C.A.C. O1J .0604(b) (1984) (amended March 1994). Certain warnings are therefore required before a permanent State employee may be terminated on the grounds of unsatisfactory job performance, Manual, Sec. 9, at 3-5; *see also Jones v. Dept. of Human Resources*, 300 N.C. 687, 690-91, 268 S.E.2d 500, 502 (1980), while none are required for dismissals based on an employee's personal (mis)conduct. *See, e.g., Leiphart*, 80 N.C. App. at 351, 342 S.E.2d at 923.

Listed in the Manual are several examples of conduct constituting unsatisfactory job performance, including: careless errors, poor quality work, untimeliness, *failure to follow instructions or procedures*, or a pattern of regular absences or tardiness. In contrast, examples of personal (mis)conduct include: abuse of patients or residents, insubordination, reporting to work under the influence of drugs or alcohol, and stealing or misusing State property. Manual, Sec. 9, at 8.1-8.2.

We approve the distinction between the categories of "just cause" as set forth in the Manual and hold it provides an applicable test for determining whether a dismissal is for a "good or adequate reason having a basis in fact" under particular circumstances. However, to the extent the Commission's legal conclusion of "just

cause" was based upon its characterization of petitioner's actions on 23 March 1989 as "personal misconduct," we hold this interpretation to be erroneous. Consequently, the Order of the Commission must be reversed.

Petitioner's alleged violations of Center policy — leaving the facility for his supper break without signing out or informing his supervisor or the HCTs on the fifth floor of his departure — more properly fall within contemplation of the *job performance* category of employee behavior warranting disciplinary action. Concerning infractions of this nature, "a reasonable person would expect to be notified . . . and allowed an opportunity to improve" his work performance before being fired. Manual, Sec. 9, at 3. This is particularly so in light of acknowledgement by all but one of the witnesses testifying at the hearing that neither policy was strictly enforced. Indeed, according to petitioner's supervisor Ann Boykin, if unfortunate circumstances had not befallen him and he had simply returned to work at 6:30 on the evening of 23 March 1989, he might not even have received a reprimand. Moreover, DHR's assertion that petitioner's behavior endangered the welfare of his patients is belied by the action of Boykin (the employee with "overall responsibility to see that the Center's policies were being followed during [petitioner's] shift") in herself going "to supper" after having been informed petitioner, who had immediate responsibility for the patients, could not be located.

We note also the similarity of this case to *Parks v. Dept. of Human Resources*, 79 N.C. App. 125, 338 S.E.2d 826, *disc. review denied*, 316 N.C. 553, 344 S.E.2d 8 (1986). Parks, an HCT at a residential treatment center for the mentally retarded, was fired for negligently failing to report observations of resident abuse, in violation of the facility's written policy. *Id.* at 126-27, 338 S.E.2d at 826-27. The Commission stated his "acts and omissions . . . constituted personal conduct," justifying immediate dismissal. *Id.* at 130, 338 S.E.2d at 828. Although Parks' alleged failure arguably constituted a violation far more egregious than the infractions of petitioner herein, this Court reversed on grounds that the accusations against Parks were in the nature of unsatisfactory job performance and did not constitute "just cause" for his dismissal. *Id.* at 133-34, 338 S.E.2d at 830.

However, DHR argues in its brief to this Court that the Commission's conclusion of "just cause" may also be affirmed as being

grounded upon inadequate job performance. Petitioner responds that such a conclusion is not supported by "substantial evidence . . . in view of the entire record," *see* G.S. § 150B-51(b)(5), because the record fails to demonstrate petitioner received the warnings required by law.

Initially, we observe that "personal (mis)conduct" was the Center's basis for termination of petitioner at all points in the procedural course of this matter, save one. The letter of dismissal petitioner received from the Center's Director of Nursing Dale Hilburn dated 10 April 1989, Director Hilburn's written account of the 23 March incident and 10 April dismissal, Director Hilburn's Pre-dismissal Conference report, as well as a letter dated 3 May 1989 to petitioner from Mr. J. G. Doby, Director of DHR's Division of Mental Health, Mental Retardation and Substance Abuse Services, all stated petitioner was terminated "due to personal misconduct" and cited the same actions later relied upon by the Commission in upholding his dismissal. Only in its written Prehearing Statement before the Commission does DHR's alternative contention of "unsatisfactory job performance" arise. However, at no place in the transcript of the proceedings before the Commission nor at any other place in the record before us is there any indication that DHR otherwise advanced this alternate position before the administrative law judge. Having proceeded through its supervisory personnel on the theory that the conduct furnishing the grounds for petitioner's termination fell under the category of "personal misconduct," DHR cannot now prevail by arguing it "could" have proceeded against him on the basis of unsatisfactory job performance. *See, e.g., Grissom v. Dept. of Revenue*, 34 N.C. App. 381, 383, 238 S.E.2d 311, 312-13 (1977) ("An appeal has to follow the theory of the trial, and where a cause is heard on one theory at trial, [respondent] cannot switch to a different theory on appeal.") (citations omitted), *disc. review denied, appeal dismissed*, 294 N.C. 183, 241 S.E.2d 517 (1978). *See also Cone Mills Corp. v. N.L.R.B.*, 413 F.2d 445, 452 (4th Cir. 1969) ("[C]ourts may not accept appellate counsel's *post hoc* rationalizations for agency action . . . ."); *United States ex. rel. Coates v. Laird*, 494 F.2d 709, 711 (4th Cir. 1974) ("It was the duty of the [agency] . . . to articulate its reasons for its decision and to articulate them clearly."). Moreover, DHR has not raised its contention by cross-assignment of error. *See* N.C.R. App. P. 10(d). DHR's assertion, therefore, is not properly before us.

Additionally, assuming *arguendo* we need consider respondent's argument, it is unfounded. Briefly focusing upon the superior court's order, we first consider whether the court employed the proper scope or method of review. *See McCrary*, 112 N.C. App. at 168, 435 S.E.2d at 365. In this regard, we note the order recites that the court decided petitioner's appeal in its entirety based upon the court's consideration of "the whole official record." Such consideration constituted in the case *sub judice* appropriate selection by the court of the "whole record test."

We therefore next examine the "whole record" in order to determine whether "substantial evidence" therein supports the conclusion petitioner was dismissed for "just cause" on the alternative grounds of "unsatisfactory job performance," and to consider whether the trial court committed an error of law. *See, e.g., Wiggins*, 105 N.C. App. at 306-07, 413 S.E.2d at 5-6. "Substantial evidence" is that which a reasonable mind would consider sufficient to support a particular conclusion, *Walker*, 100 N.C. App. at 503, 397 S.E.2d at 354 (citation omitted), and must be more than a scintilla or just a permissible inference. *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982) (citation omitted).

In *Jones v. Dept. of Human Resources*, 300 N.C. 687, 268 S.E.2d 500 (1980), our Supreme Court discussed the function and format of the warnings a permanent State employee must receive before being terminated on the grounds of unsatisfactory job performance.

> Prior to dismissal for causes relating to performance of duties, a permanent State employee is entitled to three separate warnings that his performance is unsatisfactory. He must receive: (1) an oral warning explaining how he is not meeting the job's requirements; (2) a second oral warning outlining his unsatisfactory performance with a follow-up letter reviewing the points covered by the oral warning; (3) a final written warning setting forth in numerical order the specific acts or omissions that are the reasons for the disciplinary actions, and the employee's appeal rights. Only after receiving these three separate warnings may an employee be dismissed for unsatisfactory performance of duties.

*Id.* at 690-91, 268 S.E.2d at 502 (emphasis added).

*Jones* relied upon the following language from the Manual governing State personnel:

AMANINI v. N.C. DEPT. OF HUMAN RESOURCES

[114 N.C. App. 668 (1994)]

## I. Job Performance Discipline and Dismissal

This category covers all types of performance-related inade-
quacies. . . . Warnings administered under this policy are in-
tended to bring about a permanent improvement in job per-
formance . . . .

Employees who are dismissed for unsatisfactory job perform-
ance shall receive at least three warnings: First, one or more
oral warnings; second, a written warning to the employee
documenting all relevant points covered in the disciplinary
discussion; third, a final written warning which notifies the
employee that failure to make the required performance im-
provements may result in dismissal.

In administering this policy, supervisors should be aware that,
in part, the intent of this policy is to assist and promote im-
proved employee performance, rather than to punish.

Manual, Sec. 9, at 3; *see also* 25 N.C.A.C. O1J .0605 (1989).

Applying the foregoing rules to our examination of the record,
we find indications, undisputed by petitioner, that he had been
instructed by his supervisors prior to 23 March 1989 to improve
certain aspects of job performance, and that he had also been
given certain warnings. However, the Commission's order contains
no findings pertaining to warnings received by petitioner or to
the nature of his prior unsatisfactory performance. Moreover, we
discern no record evidence sufficient to establish that the Center
provided petitioner the kind and number of warnings our courts
have held necessary to precede dismissal for reasons of job
performance.

We further observe that the trial court's conclusion of "per-
sonal misconduct" cannot by its own terms be interpreted as a
determination that petitioner was properly terminated for "un-
satisfactory job performance."

Based on the foregoing, therefore, the trial court's conclusion
of "personal misconduct," even if *arguendo* interpreted to mean
petitioner was properly terminated for "unsatisfactory job perform-
ance," is not supported by substantial evidence in the record as
a whole. It thus constitutes an error of law, and DHR's alternative
contention is unavailing. *See, e.g., Davis,* 110 N.C. App. at 734-38,
432 S.E.2d at 134-36.

CONE MILLS CORP. v. ALLSTATE INS. CO.

[114 N.C. App. 684 (1994)]

To summarize, because petitioner's argument regarding interpretation of the term "just cause" based upon personal misconduct has raised a question of law, we consider this contention *de novo*. Having done so, we hold as a matter of law that the actions of petitioner on 23 March 1989 did not constitute personal misconduct so as to support his immediate termination for "just cause." In addition, assuming *arguendo* the question is properly before us, no substantial evidence in the record as a whole sustains a conclusion petitioner's dismissal was for "just cause" based upon unsatisfactory job performance.

Accordingly, the judgment of the trial court affirming the decision of the State Personnel Commission to terminate petitioner's employment with the Center is reversed. Further, this matter is remanded to the superior court for subsequent remand to the Commission with direction to order the reinstatement of petitioner and such other relief to which he may be entitled consistent with our opinion herein. Because of this disposition of petitioner's appeal, it is unnecessary to examine his remaining assignments of error.

Reversed and remanded.

Judges EAGLES and MARTIN concur.