THOMAS G. McHUGH, PETITIONER/APPELLANT v. NORTH CAROLINA DEPARTMENT
OF ENVIRONMENTAL, HEALTH AND NATURAL RESOURCES, RESPONDENT/
APPELLEE

No. COA96-98

(Filed 17 June 1997)

1. **Environmental Protection, Regulation, and Conservation § 124 (NCI4th)— failure to comply with forestry best management practices—violation of Sedimentation Pollution Control Act**

The evidence supported a determination by the DEHNR that petitioner-landowner failed to comply with forestry best management practices and violated the Sedimentation Pollution Control Act while conducting a logging operation on his property, although no further logging activity occurred after the site was found to be in compliance and there was no evidence that downstream landowners complained about sedimentation damages, where the record shows that petitioner's property was reinspected three times and found not to be in compliance because sediment from eroded areas on skid trails was entering a stream in at least three different locations and causing a delta to form at a downstream pond; debris from the logging operation was obstructing the stream's flow; and petitioner was notified of the violations after each inspection and asked to take corrective measures, but he failed to do so.

**Am Jur 2d, Pollution Control § 6.**

**Validity of state statutory provision permitting administrative agency to impose monetary penalties for violation of environmental pollution statute. 81 ALR3d 1258.**

2. **Environmental Protection, Regulation, and Conservation § 124 (NCI4th)— sedimentation violations—civil penalties—validity**

The civil penalties assessed by the DEHNR for petitioner's violation of the Sedimentation Pollution Control Act (SPCA) by his logging activities were valid, although the penalties were not reduced by the amount recommended by the administrative law judge on the ground that petitioner did not violate acreage-dependent provisions of the SPCA, where a $30 per day penalty based on the degree of sedimentation and a $50 per day penalty

based on petitioner's failure to take corrective action were not affected by acreage requirements, and the amounts assessed were within guideline ranges and based upon factors enumerated in the applicable statute and code regulations. N.C.G.S. § 113A-64(a).

**Am Jur 2d, Pollution Control § 6.**

**Validity of state statutory provision permitting administrative agency to impose monetary penalties for violation of environmental pollution statute. 81 ALR3d 1258.**

3. **Environmental Protection, Regulation, and Conservation § 124 (NCI4th)— land disturbing activities—civil penalty—less than one acre**

A civil penalty may be assessed for land-disturbing activities under N.C.G.S. § 113A-57(1) and (2) which uncover less than one acre of property.

**Am Jur 2d, Pollution Control § 6.**

**Validity of state statutory provision permitting administrative agency to impose monetary penalties for violation of environmental pollution statute. 81 ALR3d 1258.**

Appeal by petitioner from judgment entered 24 October 1995 by Judge Forrest A. Ferrell in Henderson County Superior Court. Heard in the Court of Appeals 8 October 1996.

Petitioner Thomas G. McHugh is the owner of a tract of real property located in Henderson County, North Carolina. The property is situated in a valley where water drains into a stream on the property. The stream enters a lake located approximately 1,000 feet downstream and from there flows into the Green River. In February, 1991 a complaint was made to respondent N.C. Department of Environmental, Health and Natural Resource's (DEHNR) Asheville regional office concerning petitioner's logging operation on his real property. Richard Phillips, regional engineer in the respondent's Division of Land Resources (DLR), referred investigation of the complaint to David Brown, district forester in the respondent's Division of Forest Resources (DFR). DLR and DFR had an agreement that DFR would evaluate and monitor forestry operations that were not in compliance with forestry best management practices (BMP). Dennis Owenby, an environmental engineering technician from DLR, drove by the site on February 6, 1991 and observed petitioner's

logging operation. He prepared a report noting this was an initial inspection and he did not check any boxes on the report indicating any BMP violations.

Between February and May 1991, DFR and petitioner communicated concerning petitioner's required BMP compliance. Petitioner and Brown toured the property on 3 June 1991 and Brown certified petitioner was in compliance with the BMPs on that date.

After receiving another complaint, Brown, along with Charles Koontz, a Henderson County ranger, and two DFR employees, conducted another inspection of petitioner's property on 21 August 1991. Although there had not been any additional logging activity on the property since the June, 1991 inspection, Brown now found the site was not in compliance with BMPs. He observed silt entering the stream in at least three locations. Brown sent petitioner a notice of noncompliance describing the violations and the corrective measures required.

Follow-up inspections of the property were made on September 16 and October 15, 1991, and the site was still not in compliance. Petitioner's noncompliance was referred to the DLR for enforcement under the Sedimentation Pollution Control Act of 1973, Chapter 113A, Article 4 of the General Statutes (SPCA). DLR technician Dennis Owenby inspected the site on 22 October 1991 and determined petitioner was not in compliance with the SPCA in that, among other things, sedimentation had settled into the stream on the property causing "severe" damage. After walking the property, Owenby determined that more than one acre had been disturbed by petitioner's logging. Owenby was required to make a determination as to the size of the area disturbed in that some, but not all, provisions of the SPCA apply only when more than one contiguous acre is uncovered. A Notice of Violations Of The Sedimentation Pollution Control Act was sent to petitioner on 23 October 1991 describing the violations of the SPCA, the corrective work needed and giving petitioner until 22 November 1991 to complete the work.

Several additional site inspections were made, including a 4 December, 1991 inspection when Owenby found a sediment delta was forming at a neighbor's downstream pond where the stream from petitioner's property entered the pond. It was not until October, 1992 that petitioner's property was finally found to be in compliance with the SPCA. The director of DLR assessed civil penalties of $7,500.00 against petitioner for the period from 29 October 1991, the date the

notice of violations was received by petitioner, and ending 6 January 1992.

Petitioner appealed the assessment to the Office of Administrative Hearings and an administrative law judge heard the matter on 9 December 1992 and 3 August 1993 in Hendersonville, North Carolina. A recommended decision was issued on 28 December 1993, pursuant to N.C. Gen. Stat. § 150B-34 of the Administrative Procedure Act, finding petitioner had failed to conduct his logging forestry activities in accordance with BMPs and that, as a result, the SPCA applied to his land-disturbing activities. The administrative law judge (ALJ): (1) rejected the DLR's position that the activities uncovered more than one contiguous acre; (2)concluded as a matter of law that petitioner had not violated those provisions of the SPCA cited in the recommended decision which were dependent upon more than one contiguous acre being uncovered; (3) concluded petitioner did violate those provisions cited which were not acreage-dependent; and (4) recommended the penalty be upheld in the reduced amount of $2,975.00.

DEHNR's general counsel, Richard Whisnant, entered his agency's final decision on 12 August 1994 pursuant to N.C. Gen. Stat. § 150B-36, in which he: (1) accepted the ALJ's finding that less than one contiguous acre was uncovered by petitioner's actions; (2) agreed petitioner had not violated those mandatory standards contained in the SPCA that were acreage-dependent; (3) accepted the ALJ's findings and conclusions that petitioner had violated the standards not dependent on an acreage amount; and (4) found the penalty should be upheld in the amount of $6,650.00.

Petitioner filed a petition for judicial review pursuant to Article 4, Chapter 150B, on 15 September 1994 in the Superior Court for Henderson County. A Response to Petition for Judicial Review dated 14 October 1994 was prepared by the Office of the Attorney General. The record of the administrative proceedings was filed with the trial court on 14 November 1994. The petition for judicial review was heard pursuant to N.C. Gen. Stat. §§ 150B-50, 51 on 14 August 1995 with the trial court entering judgment affirming the final agency decision on 24 October 1995. Petitioner appeals.

*Tate and Bomba, P.L.L.C., by Christopher A. Bomba and John E. Tate, Jr., for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Sueanna P. Sumpter, for respondent/appellee.*

McHUGH v. N.C. DEPT. OF E.H.N.R.

[126 N.C. App. 469 (1997)]

McGEE, Judge.

**[1]** Petitioner contends the trial court erred in upholding DEHNR's final agency decision. Specifically, petitioner argues the record contains insufficient evidence to support a violation of the SPCA and the agency erred as a matter of law in assessing the civil penalty. The proper standard for the superior court's judicial review of a final agency decision "depends upon the particular issues presented on appeal." *Act-Up Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997); *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). N.C. Gen. Stat. § 150B-51(b) provides:

[T]he court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

G.S. § 150B-51(b) (1995).

Judicial review of whether an agency decision was based on an error of law requires a *de novo* review. *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). When the petitioner argues the agency's decision was not supported by the evidence or the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test. *In re Appeal By McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363, (1993). The 'whole record' test "requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.'" *Amanini*, 114 N.C. App.

at 674, 443 S.E.2d at 118. Substantial evidence is "more than a scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982).

The standard of review for an appellate court when reviewing a trial court's order affirming or reversing a final decision of an administrative agency requires this Court to examine the trial court's order for error of law, just as in any other civil case. "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Amanini*, 114 N.C. at 675, 443 S.E.2d at 118-19.

The trial court in this case properly employed the correct standard of review of the agency's order and the judgment of the trial court stated it "reviewed the record and matters on file, . . . considered the oral and written arguments of the attorneys for each of the parties, and . . . considered the relevant statutory provisions. The Court has applied the standard of review set forth in N.C.G.S. § 150B-51." Upon review of the issues raised by petitioner, we find the trial court did not err in affirming the agency's conclusion that petitioner failed to comply with applicable BMPs and violated the SPCA.

Petitioner contends that because David Brown inspected the site in June 1991 and found the site to be in compliance, and no further logging activity occurred at the site after that time, and also because there was no evidence that downstream landowners complained about sedimentation damage, the evidence fails to rise to the level of substantial evidence showing a violation occurred. We disagree.

The record shows petitioner's property was inspected three times between August and October 1991. Each time, the site was found not to be in compliance because sediment from eroded areas on skid trails was entering the stream in at least three different locations, eventually causing a delta to form at a downstream pond. Water bars and natural vegetation at the site were inadequate to prevent sediment from entering the stream. Further, debris from the logging operation was found in the stream, obstructing or impeding the stream's flow. After each inspection, petitioner was notified of the violations and asked to take corrective measures. Also, forester John Lively testified that Brown's June 1991 report stated petitioner's property "was in compliance *at that time*." (emphasis added). Lively also testified there had been no additional growth of annual grasses and weeds as

McHUGH v. N.C. DEPT. OF E.H.N.R.

[126 N.C. App. 469 (1997)]

Brown had perhaps anticipated. He further testified that Brown's report stated that petitioner needed to check the water bars periodically and keep them clear with a shovel, and that petitioner could also sow grass seed to help maintain the property in compliance. Taking all the evidence together, including the evidence that petitioner's property was found to be in compliance in June 1991, the record contains more than a scintilla of evidence adequate to support a conclusion that the property failed to comply with BMPs. Therefore, substantial evidence existed in the record to find petitioner violated BMPs while conducting logging operations on his property.

[2] Petitioner next argues the agency erred as a matter of law in assessing the amount of the civil penalties. We find no merit to this argument. Under N.C. Gen. Stat. § 113A-64(a) and N.C. Admin. Code tit. 15A, r. 4C .0006 (September 1995), DEHNR has discretion to assess civil penalties in varying amounts, commensurate with the seriousness of the violation, as long as the assessments are within the established guiding standards. *See In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 383, 379 S.E.2d 30, 36 (1989). Here, the record shows the amounts assessed were within the guideline ranges and based upon consideration of the factors enumerated within the applicable statute and code regulations. Petitioner seems to argue that because the administrative law judge recommended reduction of the original penalty because some of the violations were acreage dependent, the agency erred in its final decision by not reducing the penalty by a greater amount. However, the $30 a day penalty imposed was based upon the degree of sedimentation that had occurred, a factor not influenced by the amount of land involved. The $50 a day penalty was based on petitioner's failure to take action to correct the violations and again, was not affected by acreage requirements. Therefore, we find no error of law in the amount assessed as a civil penalty.

[3] Lastly, petitioner argues the SPCA does not authorize a civil penalty to be assessed for land-disturbing activities which uncover less than one acre of property. Petitioner contends that because N.C. Gen. Stat. § 113A-57 (3) and (4) contain a requirement that more than one acre of land must be uncovered before a violation will be found, this constitutes a "clear inference" that G.S. 113A-57(1) and (2) also require more than one acre of land to be involved. We disagree.

G.S. 113A-57(1) deals with land-disturbing activity near a lake or natural watercourse. N.C. Gen. Stat. § 113A-52(6) defines land-

disturbing activity as: "*[A]ny* use of the land . . . that results in a change in the natural cover or topography and that may cause or contribute to sedimentation." (emphasis added). G.S. 113A-57(2) deals with graded slopes. Had our General Assembly also wished these sections to contain a one acre requirement, they could have added it to these sections. *See Preston v. Thompson*, 53 N.C. App. 290, 292, 280 S.E.2d 780, 783 (1981) (when giving a statute its plain meaning, the courts may not interpolate or superimpose provisions not contained within the statute), *disc. review denied and appeal dismissed*, 304 N.C. 392, 285 S.E.2d 833 (1981). Further, this view better serves the stated legislative intent behind the enactment of the SPCA, which is to protect against the sedimentation of our waterways. *See* N.C. Gen. Stat. § 113A-51.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

Judges WYNN and JOHN concur.