JAMES PARKS v. DEPARTMENT OF HUMAN RESOURCES

No. 8510SC390

(Filed 4 February 1986)

1. **Administrative Law § 8— appeal to superior court from State Personnel Com-mission—summary judgment not proper—court's order sufficient for review**

Petitioner's right to judicial review of a State Personnel Commission opin-ion affirming the termination of his employment was clearly set forth in N.C.G.S. 150A-51, and respondent's and petitioner's motions for summary judg-

ment were procedurally incorrect; however, the trial court's order allowing respondent's motion for summary judgment was tantamount to affirming the Full Commission's ruling upholding petitioner's dismissal and sufficiently set forth a reviewable basis for affirming the Full Commission's ruling.

2. **Master and Servant § 10— O'Berry Hospital employee—discharge for failure to report abuse—no warnings given—reversed**

The trial court erred by affirming the State Personnel Commission's decision to uphold petitioner's termination of employment at O'Berry Hospital for failure to report abuse of residents where a review of the whole record revealed that the O'Berry Center promulgated an Administrative Policy Manual which indicated that failure to report suspected abuse could result in disciplinary action while abuse could result in termination; the O'Berry manual referred to the State Personnel Manual, which indicated that three warnings were required prior to dismissal of an employee for unsatisfactory performance of duties; the O'Berry manual and the State manual characterized negligence as relating to performance of duties; two letters from O'Berry officials to petitioner indicated that petitioner was terminated for negligence in the performance of his duties; and there were no warnings given for the unsatisfactory performance of petitioner's duty to report acts of resident abuse. N.C.G.S. 126-35.

APPEAL by petitioner from *Davis, James C., Judge.* Judgment entered 18 January 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 24 October 1985.

On 6 February 1983 petitioner James Parks was employed as a Health Care Technician by the Department of Human Resources at the O'Berry Center in Goldsboro, North Carolina. As of 6 February 1983 petitioner had been employed continuously by the State of North Carolina for approximately seven (7) years. The O'Berry Center is a residential treatment center for the mentally retarded.

On 6 February 1983 petitioner was on duty with another Health Care Technician, Johnny Earl Bryant. Petitioner and Bryant shared supervisory responsibility for 13 residents of the O'Berry Center. Petitioner and Mr. Bryant worked on the B Shift from 6:30 a.m. to 3:00 p.m. Their responsibilities included providing general health care to respondent's residents in Environmental Living Complex VI. On 6 February 1983 petitioner went to eat his lunch at 11:00 a.m. Upon petitioner's return from lunch a resident named Richard was observed by petitioner standing near the door with two chairs around his neck. Petitioner did not report this observation to his superiors at O'Berry Center. Mr.

Bryant and petitioner were relieved by the C Shift and they left O'Berry Center.

At 9:00 p.m. on 6 February 1983 Michael Burris, a developmental technician observed bruises on Richard's buttocks and shoulder. Mr. Burris informed management of Richard's bruises. O'Berry Center management personnel initiated a preliminary investigation of the circumstances surrounding Mr. Burris' discovery of Richard's bruises. During the preliminary investigation a resident of the O'Berry Center informed the management of the center that "Johnny Bryant had hit Richard and him with a pool stick." A medical examination of Richard revealed that his bruises could have been caused by being struck by a cue stick. Mr. Bryant and petitioner were requested to return to O'Berry Center for questioning.

Mr. Bryant and petitioner were interviewed separately by management personnel of O'Berry Center. Mr. Bryant and petitioner each denied having any knowledge of Richard's bruises. However, petitioner volunteered his observation of Richard standing near a door with two chairs around his neck. Petitioner informed management that he had questioned Mr. Bryant with respect to this incident. Petitioner informed his interviewers that Mr. Bryant had admitted to him that he had placed the chairs around Richard's neck to prevent Richard from banging his head against the wall. Petitioner's statements were reduced to writing and used to confront Mr. Bryant about this incident. Mr. Bryant denied the charges and asserted that he had observed petitioner abusing the residents. On 6 February 1983 petitioner and Mr. Bryant were suspended following each other's allegations of patient abuse and their failure to report these incidents.

On 10 February 1983 petitioner was informed by letter that his negligence in reporting observations of resident abuse was in violation of State and O'Berry policies. The letter written by Chief of Residential Services further informed petitioner that his employment at the O'Berry Center was terminated effective 6 February 1983. Mr. Bryant received a similar letter. In compliance with procedures prescribed by the State Personnel Commission petitioner filed a grievance for wrongful termination. On 24 February 1983 and 7 March 1983 petitioner met with J. H. Lyall, Ph. D., Director of O'Berry Center. On 8 March 1983 Dr.

Lyall informed petitioner by letter that petitioner's termination would be upheld.

Petitioner appealed from Dr. Lyall's decision to uphold his termination. On 15 September 1983 petitioner had a hearing before Joseph L. Totten, Hearing Officer for the State Personnel Commission. In an opinion dated 1 December 1983 the termination of petitioner's employment was upheld, but petitioner was awarded back pay, other employment benefits and attorney's fees not to exceed $300.00. Petitioner appealed to the Full State Personnel Commission which adopted the Hearing Officer's Conclusions of Law and Findings of Fact. The Full Commission affirmed the termination of petitioner's employment.

Pursuant to G.S. 150A-45 petitioner filed in Superior Court, Wake County, a petition for review of the Full Commission's decision. Petitioner and respondent moved the court for summary judgment. On 17 January 1985 the court denied petitioner's motion for summary judgment, but granted respondent's motion for summary judgment. Petitioner appeals.

*Lacy H. Thornburg, by Ann Reed, Special Deputy Attorney General, for the Department of Human Resources, appellee.*

*Hulse & Hulse, by Herbert B. Hulse, for petitioner appellant.*

JOHNSON, Judge.

The question we must decide is whether a review of the whole record reveals that there is substantial evidence therein to support the Full Commission's ruling that petitioner was dismissed for just cause. We conclude that the court's order affirming the Full Commission's ruling is not supported by a review of the whole record.

[1] The scope of review and power of the Superior Court in reviewing an agency decision is set forth in the Administrative Procedure Act as follows:

The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

If the court reverses or modifies the decision of the agency, the judge shall set out in writing, which writing shall become a part of the record, the reasons for such reversal or modification.

G.S. 150A-51.

Respondent and petitioner improperly made motions for summary judgment in the Superior Court. As set forth hereinabove, the task of the Superior Court was to affirm, remand for further proceedings, reverse, or modify the Full Commission's decision after examining all of the competent evidence and pleadings which comprise the whole record to determine if there is substantial evidence in the record to support the administrative tribunal's findings and conclusions. *See Community Sav. & Loan Ass'n v. North Carolina Sav. & Loan Comm'n*, 43 N.C. App. 493, 259 S.E. 2d 373 (1979). However, respondent and petitioner's motions for summary judgment initiated a different inquiry by the court into whether there was a triable material issue of fact. *See Wachovia Mortgage Co. v. Autry-Barker-Spurrier Real Estate, Inc.*, 39 N.C. App. 1, 249 S.E. 2d 727 (1978), *aff'd per curiam*, 297 N.C. 696, 256 S.E. 2d 688 (1979).

Petitioner's right to judicial review is clearly set forth in G.S. 150A-51, *supra*. Respondent and petitioner's motions for summary judgment were procedurally incorrect. However, the trial court's order allowing respondent's motion for summary judgment was tantamount to affirming the Full Commission's ruling upholding petitioner's dismissal. The court's order was as follows:

> This cause coming on before the undersigned judge on motion of respondent for summary judgment and it appearing to the court that there is no genuine issue as to any material fact and that the respondent is entitled to a judgment as a matter of law; IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that summary judgment is granted in favor of respondent against petitioner and that this action is dismissed with the costs to be taxed against the petitioner.

This Court has held that a statement by a Superior Court judge that an agency failed "to support its Conclusion of Law that the Petitioner was grossly incompetent within the purview of G.S. 93D-13(a)(2)" constituted a succinct and adequate statement of its reasons for reversing the agency's decision. *Faulkner v. North Carolina State Hearing Aid Dealers & Fitters Bd.*, 38 N.C. App. 222, 226, 247 S.E. 2d 668, 670 (1978). In the case *sub judice* the court's order sufficiently sets forth a reviewable basis for affirming the Full Commission's ruling.

[2]  We now turn to the whole record which was before the court to review, and determine whether there is substantial, competent evidence which would support the Full Commission's ruling. In affirming the hearing officer's decision to uphold respondent's dismissal of petitioner the Full Commission adopted the Findings of Fact and Conclusions of the hearing officer as its own. In the opinion of the hearing officer we find that conclusion number two (2) raises the issue we must address on appeal. In pertinent part that conclusion is as follows:

> The Petitioners' acts and omissions in the chairs incident constituted personal conduct, which is grounds for their immediate dismissals . . . .

Petitioner contends that the whole record which was submitted to the court reveals that the Full Commission's decision to uphold respondent's dismissal of him was contrary to law. The argument forwarded by petitioner is that respondent may not dismiss him for performance of duty reasons until he has been given the warnings required by G.S. 126-35. *See Jones v. Dep't of Human Resources*, 300 N.C. 687, 268 S.E. 2d 500 (1980).

On 6 Feburary 1983 two directives were in effect relating to disciplinary action for abuse and neglect of residents by

employees of the O'Berry Center. These directives classify various infractions, whereby, an employee may be subject to specified disciplinary actions. Respondent contends that petitioner was dismissed with just cause for his personal conduct. Petitioner contends that all communications with him indicated that his dismissal was for actions which are classified in the directives as unsatisfactory performance of duties.

O'Berry Center promulgated an Administrative Policy Manual. The subjects of that manual are abuse, neglect and corporal punishment of residents. The policy section of the manual contains the following statement "Employees found guilty of abuse shall be terminated. Failure to report suspected abuse may be subject to disciplinary action." The definitional section of the manual contains five sections including one section entitled "Neglect."

> III *Neglect*: Any situation in which the staff do (sic) not carry out duties or responsibilities which in turn affects the health, safety or well being of a resident.
>
> EXAMPLES;
>
> —Failure to implement programs as designed by the interdisciplinary team.
>
> —Failure to insure adequate intake of food or water.
>
> —Failure to assure resident is appropriately dressed.
>
> —*Neglect is failure to report appropriately any observed or suspected abuse.*
>
> —Leaving residents unattended.

(emphasis ours and in original). We note that the examples listed in Section III all share the common element of an act of omission. This document is internally consistent in that the acts of omission, such as failure to report abuse, "may be subject to disciplinary action." However, when an employee commits acts of resident abuse that employee "shall be terminated." The Administrative Procedure Manual, promulgated by O'Berry Center, makes reference to the State Personnel Manual. The pertinent provisions of the policy statement in the State Personnel Manual are as follows:

The causes for dismissal fall into two categories: (1) *causes relating to performance of duties, and (2) causes relating to personal conduct detrimental to State service.* Suspension may be necessary in either category and may be used in accordance with the provisions of this policy under suspension.

1. *Performance of Duties.* Employees who are dismissed for unsatisfactory performance of duties should receive at least 3 warnings: First, one or more oral warnings; second, an oral warning with a follow-up letter to the employee which sets forth the points covered in the discussion; third, a written warning which will serve notice upon the employee that a continuation of the unacceptable practices may result in specific pay losing disciplinary action or dismissal.

(emphasis in original). Clearly suspension may be appropriate in cases of personal misconduct or unsatisfactory performance of duties. It is equally clear that three (3) warnings are required prior to dismissal of an employee for unsatisfactory performance of duties.

The State Personnel Manual also separately enumerates those causes for dismissal which are related to performance of duties and personal misconduct.

*Performance of Duties* — The following causes relating to the performance of duties are respresentative of those considered for suspension or dismissal: . . .

2. Negligence in the performance of duties.

(emphasis in original). Thus, the O'Berry Center's Administrative Procedure Manual and the State Personnel Manual categorize negligence as a cause for dismissal relating to performance of duties. Neither of these two directives pertinent to this case categorize negligence as falling within the realm of personal conduct.

We now turn to the question of whether petitioner's failure to report his observation of resident abuse should be classified as negligence. We find respondent's communications with petitioner helpful in this regard. The first letter petitioner received notifying him of his dismissal was from W. L. West, Chief of Residential Services.

Mr. James C. Parks
1219 Porter Street
Goldsboro, N. C. 27530

Dear Mr. Parks:

Pursuant to the allegations which led to your suspension February 6, 1983, I wish to inform you of our decision. A thorough investigation of the allegations and the condition surrounding the incident reveal that *you have been negligent in reporting observations* which you admit were acts of resident abuse. *Negligence in the performance of duties is in direct violation of State and O'Berry policies.* As a result of these violations, your employment at O'Berry Center is terminated. . . .

(emphasis ours). This letter reveals that respondent was terminated for negligence in performance of his duties. To further illustrate that this terminology was not the result of loose drafting we find that a letter dated 8 March 1983 written by Dr. Lyall affirmed the reason given for petitioner's termination.

Mr. James Parks
1219 South Porter Street
Goldsboro, N. C. 27530

Dear Mr. Parks:

On February 24, 1983 and March 7, 1983, I met with you to discuss your grievance for termination of employment from O'Berry Center.

Having been offered no additional information from you regarding the reason for your termination, *I still find you negligent in reporting an act of resident abuse that you observed* and I am upholding your termination. . . .

(emphasis ours). Dr. Lyall upheld petitioner's dismissal because of petitioner's negligence. There were no warnings given to this employee for this unsatisfactory performance of his duty to report acts of resident abuse.

Respondent contends that there is substantial evidence in the record to support its position that petitioner's failure to report patient abuse was personal conduct such that petitioner's

dismissal for just cause was an appropriate disciplinary action. We hold that the trial court erred in affirming the Full Commission's decision to affirm petitioner's dismissal as being for just cause. The record that was before the trial court does not support a determination that respondent was entitled to a judgment as a matter of law. Both directives referred to hereinabove unquestionably support petitioner's assertion that respondent's termination of petitioner was an inappropriate disciplinary action. The trial judge had before him two letters which asserted that petitioner's negligence was the basis for terminating petitioner's employment. Petitioner has controverted respondent's contention that a permanent state employee may be dismissed for unsatisfactory performance of his duties prior to receiving the three warnings mandated by the State Personnel Manual.

The requirement of G.S. 126-35 pointed out in *Jones, supra* is that a permanent state employee is entitled to three separate warnings giving notice that his performance is unsatisfactory. Based on the whole record, we conclude that there was not substantial competent evidence which would support the Full Commission's conclusion that petitioner's actions should be classified as personal conduct such that he was dismissed for "just cause."

Reversed and remanded.

Judges WEBB and PHILLIPS concur.