RICHARD L. GAINEY v. NORTH CAROLINA DEPARTMENT OF JUSTICE

No. 95-312

(Filed 2 January 1996)

1. **Public Officers and Employees § 67 (NCI4th)— SBI agent— dismissal—just cause**

   There was just cause for the dismissal of an SBI agent where the agent was dismissed for not meeting reporting deadlines and the State Personnel Commission found that plaintiff was able to meet the requirement when he made an effort to do so, but that no effort was made until two months prior to his dismissal. These findings support the conclusion that plaintiff was dismissed for just cause.

   **Am Jur 2d, Civil Service § 63.**

   **What constitutes unfair labor practice under state public employee relations acts. 9 ALR4th 20.**

2. **Public Officers and Employees § 66 (NCI4th)— SBI agent— dismissal—procedure**

   The conclusion by the State Personnel Commission that plaintiff's dismissal was procedurally correct was supported by the findings where the SBI made specific findings that plaintiff's dismissal was recommended, a pre-dismissal conference was scheduled, plaintiff attended the conference, there is uncontradicted evidence in the record that the specific reasons for dismissal were reviewed with plaintiff during the conference and that he was given an opportunity to respond to the allegations, although there are no specific findings, and, although there are no findings and no evidence that plaintiff received advance written notice of the pre-dismissal conference, it is clear that the purposes of the conference were met in that plaintiff attended the conference, and plaintiff has not argued nor put forth evidence that any failure to receive written notice prejudiced him in any way.

   **Am Jur 2d, Civil Service §§ 52 et seq.**

   **What constitutes unfair labor practice under state public employee relations acts. 9 ALR4th 20.**

**3. Public Officers and Employees § 67 (NCI4th)— SBI agent— dismissal—failure to meet reporting deadline—deadline reasonable**

There was evidence in an action by an SBI agent dismissed for failing to meet reporting deadlines that the deadlines were reasonable where the rule was promulgated for the purpose of providing timely written reports to district attorneys, to aid in prosecution, and to enhance the credibility of the testimony of SBI agents, and the rule provides that the five-day requirement could be extended for legitimate reasons.

**Am jur 2d, Civil Service § 63.**

**4. Public Officers and Employees § 66 (NCI4th)— SBI agent— dismissal—due process**

A dismissed SBI agent's pre-dismissal conference met the requirements of procedural due process where there were findings supported by substantial evidence that plaintiff was given both oral and written notice of the charges against him, and that he knew that the evidence consisted of reviews of his reports over a period of approximately four years; that plaintiff was given an opportunity to respond to the allegations and that plaintiff submitted a memo suggesting ways he could improve his performance in the future; and plaintiff never disputed that he did not maintain his records in accord with SBI policy or meet the reporting deadline.

**Am Jur 2d, Civil Service §§ 52 et seq.**

**5. Public Officers and Employees § 66 (NCI4th)— SBI agents—dismissal—one rehired—equal protection**

There was no violation of equal protection where plaintiff was dismissed as an SBI agent for not meeting reporting deadlines, while another agent who had not met the deadlines resigned and was rehired, but both agents had been given the option of resigning and re-applying and plaintiff chose not to resign. Nothing in the record suggests that plaintiff was singled out for dismissal or treated differently than the other agent. Furthermore, there is no evidence that plaintiff has re-applied.

**Am Jur 2d, Civil Service §§ 52 et seq.**

**6. Public Officers and Employees § 66 (NCI4th)— SBI agent— dismissal—warnings two years old**

It was not improper for the North Carolina Department of Justice to dismiss plaintiff SBI agent based on warnings which were two years old. There is no requirement that the warnings occur within some period of time prior to the dismissal. Moreover, the violations here related to the very reasons for which the employee was dismissed.

**Am Jur 2d, Civil Service §§ 52 et seq.**

Appeal by petitioner from judgment filed 27 October 1994 in Wake County Superior Court by Judge E. Lynn Johnson. Heard in the Court of Appeals 5 December 1995.

*Young Moore and Henderson, P.A., by John A. Michaels, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General John H. Watters, for respondent-appellee State.*

GREENE, Jupdge.

Richard L. Gainey (plaintiff) appeals from a judgment of the trial court filed 27 October 1994, affirming the final decision of the State Personnel Commission (SPC), which determined that plaintiff's discharge by the North Carolina Department of Justice (Justice) was procedurally correct and for just cause.Plaintiff was dismissed from his position as a special agent for the State Bureau of Investigation (SBI) after a pre-dismissal conference, which followed a series of warnings, because plaintiff repeatedly failed to meet reporting deadlines. Pursuant to N.C. Gen. Stat. § 150B-23, on 19 April 1991, plaintiff filed a petition with the Office of Administrative Hearings for a contested case hearing, alleging that his dismissal was procedurally incorrect, because the warnings preceding his dismissal were too old, and substantively incorrect, because Justice did not consider plaintiff's improvement in filing his paperwork. In his petition and in appeals from the SPC, plaintiff has sought reinstatement with back pay and benefits.

After review by an administrative law judge, pursuant to N.C. Gen. Stat. § 150B-32, on 9 February 1993, the SPC found as fact that

plaintiff had worked for Justice from 17 November 1980 until 31 January 1991. In 1985, Robert Morgan (Morgan), the new director of the SBI, instituted standardized operating procedures which required that all reports "be dictated within five days of the activity[,] unless an extension" was approved by the agent's supervisor. The reporting deadline was instituted because Morgan "was concerned about the timeliness and quality of SBI reports." Morgan's concern resulted from complaints by district attorneys that they were unable to "try . . . cases because the [SBI] reports were not" in their case files and the credibility concerns that result from reports made months after investigative interviews. Plaintiff's files were reviewed periodically until his dismissal and he received a series of warnings from July 1986 through December 1988, when plaintiff received a final written warning. The warnings were issued because plaintiff did not comply with SBI reporting deadlines. During these same years plaintiff received satisfactory ratings on his performance evaluations, but in each evaluation it was noted that plaintiff failed to comply with reporting deadlines.

On 11 September 1989, it was noted that plaintiff had improved in his reporting, but "was still disorganized and failed to follow up on cases." After this noted improvement, plaintiff requested that his supervisor expunge the final warning from his personnel file. Although plaintiff's supervisor responded that plaintiff "had made improvement and had 'turned the corner,' " his supervisor stated that it would take a six-month period of continuous improvement for his supervisor to bring plaintiff's request to Morgan's attention. Although, again plaintiff "received an overall rating of good on his performance evaluation for the period" of 1 January 1990 through 30 June 1990, it was noted that plaintiff "still needed improvement in the timeliness and correctness of administrative reports."

Upon review by the assistant director of the SBI of investigative files in plaintiff's area, the assistant director recommended to Morgan that both plaintiff and Special Agent Walter House (House) be dismissed. The assistant director stated that House failed to comply with the five-day reporting deadline in most of his files and that although plaintiff had improved, "the level of improvement was not near to satisfactory performance." After this review, plaintiff met with Morgan on 19 November 1990. Following this meeting, plaintiff "paid special attention to finding and correcting the reporting deficiencies and 'need-to-do's' in all of his files." Plaintiff also arranged for his supervisor to do a special case file review, which revealed that everything

in plaintiff's file was in order on 30 November 1990. On 16 January 1991, plaintiff and House had a pre-dismissal conference with Morgan, during which both were given the option of resigning and reapplying. It is undisputed that the day after this conference, plaintiff submitted a letter suggesting a method for improving his reporting. When plaintiff refused to resign, he was discharged, by letter on 30 January 1991. House, however, chose to resign and was rehired in July 1991. Plaintiff's review for the period 1 July 1990 through 21 January 1991 noted that he had improved in the area of meeting deadlines, but "that not all reports were completed within the designated reporting period." The SPC finally found that plaintiff's "job performance was deficient in terms of his often failing to comply with the SBI's requirement that investigative activity be dictated within five (5) working days of the activity." The SPC further found[1] the plaintiff "was able to meet the [reporting deadline] when he made an effort to do" so but that no effort was made until after November 1990, some two months prior to his dismissal. The SPC also found that the reporting deadline was reasonable and that neither the SBI nor any investigation or prosecution was adversely affected by plaintiff's failure to comply with the reporting deadline.

The SPC then made the following relevant conclusions of law:

9. The [plaintiff's] persistent failure to comply with SBI's reporting deadlines constituted just cause for dismissal on the basis of inadequate job performance.

. . . .

12. If the [plaintiff's] situation had been one where there had been only occasional lapses that had resulted in disciplinary action, then utilizing the [agency's policy that "serious consideration should be given to starting the disciplinary process over again with an oral warning" where warnings are more than 24 months old] would be appropriate. The [plaintiff's] violation of the reporting deadlines was, however, [an] ongoing problem. This [is] not the type of situation where the violations were so unrelated that the age of the violations would indicate that it was [appropriate] to start the disciplinary process anew.

. . . .

14. The [plaintiff's] discharge was procedurally correct.

---

1. Although denominated as a conclusion of law, we treat this conclusion as a finding of fact because its determination does not involve the application of legal principles. *Coble v. Coble*, 300 N.C. 708, 713, 268 S.E.2d 185, 189 (1980).

Pursuant to N.C. Gen. Stat. § 150B-43, plaintiff filed a petition for judicial review of the SPC's decision, and on 27 October 1994, the trial court affirmed the decision of the SPC.

The issues are whether (I) the SPC's conclusion of law that plaintiff was dismissed for just cause is supported by the findings of fact; (II) the conclusion that plaintiff's dismissal was procedurally correct is supported by the findings of fact; (III) the SPC's finding that the reporting deadline requirements were reasonable is supported by the evidence; (IV) plaintiff's pre-dismissal conference lacked procedural due process; (V) plaintiff's dismissal deprived him of equal protection of the law; and (VI) plaintiff's prior warnings, which occurred two years prior to his dismissal, can provide a procedural basis for his dismissal.

### Standard of Review

A final agency decision may be reversed or modified, by either a superior court or this Court (both of which sit as appellate courts under the Administrative Procedure Act), *see Coastal Ready-Mix Concrete Co. v. Board of Comm'rs*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980), if "the agency's findings, inferences, conclusions or decisions are:"

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b) (1991). In determining whether to reverse or modify a decision, an appellate court reviews the agency's decision either *de novo* or pursuant to the whole record test, depending upon the error that is alleged and limited by the exceptions and assignments of error as set forth during the pendency of the action. *Brooks v. Ansco & Assocs.*, 114 N.C. App. 711, 716, 443 S.E.2d 89, 92 (1994); *In re Ramseur*, 120 N.C. App. 521, 524, 463 S.E.2d 254, 256 (1995); *Dockery v. North Carolina Dept. of Human Resources*, 120 N.C. App.

827, 830, 463 S.E.2d 580, 582 (1995); *see Watson v. North Carolina Real Estate Comm'n*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296 (1987) (review is limited to errors preserved through entire process), *cert. denied*, 321 N.C. 746, 365 S.E.2d 296 (1988). "Where it is alleged [that] the agency's [findings, inferences, conclusions or] decision [are] not supported by substantial evidence or are arbitrary and capricious," then the agency's decision is reviewed pursuant to the whole record test. *Ansco & Assocs.*, 114 N.C. App. at 716, 443 S.E.2d at 92. This test requires that the reviewing court "examine all competent evidence in the record, including that which detracts from the agency's decision . . . to determine if the agency's decision was supported by substantial evidence." *Id.* " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Watson*, 87 N.C. App. at 639, 362 S.E.2d at 296 (*quoting Lackey v. North Carolina Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982)). All other errors raised pursuant to section 150B-51(b) require *de novo* review. *See Ansco & Assocs.*, 114 N.C. App. at 716, 443 S.E.2d at 92.

I

[1]  A career State employee may be dismissed only for "just cause." N.C.G.S. § 126-35 (1993); *Walker v. North Carolina Dept. of Human Resources*, 100 N.C. App. 498, 504, 397 S.E.2d 350, 355 (1990), *disc. rev. denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). Just cause may be supported by either unsatisfactory job performance or personal misconduct which is detrimental to State service. *Amanini v. North Carolina Dept. of Human Resources*, 114 N.C. App. 668, 679, 443 S.E.2d 114, 120 (1994). Unsatisfactory job performance is defined as "[w]ork-related performance that fails to satisfactorily meet job requirements as specified in the relevant job description, work plan, or as directed by the management of the work unit or agency." N.C. Admin. Code tit. 25, r. 1J.0614(j) (Sept. 1995); *Amanini*, 114 N.C. App. at 678, 443 S.E.2d at 120 (administrative rules, promulgated pursuant to statutory authority, have effect of law). A conclusion that an employee has been dismissed for just cause[2] based upon failure to satisfy "job requirements" must be supported by findings that the "job requirements were *reasonable*[3], and if so, that the employee made no

2. "Just cause" is a legal basis, set forth by statute, for the termination of a State employee, and requires the application of legal principles. Thus, its determination is a question of law. *Coble v. Coble*, 300 N.C. 708, 713, 268 S.E.2d 185, 189 (1980).

3. The determination of "reasonableness" and "reasonable efforts" does not require the application of legal principles and is therefore a question of fact. *Coble*, 300 N.C. at 713, 268 S.E.2d at 189.

reasonable effort to meet them" during his employment. *See Walker*, 100 N.C. App. at 504, 397 S.E.2d at 355 (emphasis in original).

The SPC found that the five day reporting deadline was reasonable. It further found that the plaintiff "was able to meet the [requirement] when he made an effort to do" so but that no effort was made until after November 1990, some two months prior to his dismissal. These findings support the SPC's conclusion that plaintiff was dismissed for just cause.

## II

**[2]** The plaintiff also argues that the SPC's conclusion that his discharge was procedurally correct is unsupported by the findings of fact. The procedure for dismissing a State employee requires:

- Recommendation of dismissal by a supervisor.

- Scheduling of a pre-dismissal conference.

- Advance written notice to the employee of the time and location of the pre-dismissal conference and reason for the dismissal recommendation.

- Pre-dismissal conference where recommendation for dismissal is reviewed with employee, including specific reasons for dismissal, and employee is given an opportunity to put forth information and reasons not to dismiss him.

- Management review after the conference and consideration of employee's responses. If dismissal decision is reached, a dismissal letter containing the reason for dismissal, effective date of dismissal and appeal rights must be written.

*See* N.C. Admin. Code tit. 25, r. 1J.0613(4) (Sept. 1995). The purposes of the procedural requirements are to "prevent the employer from summarily discharging an employee and then searching for justifiable reasons for the dismissal" and to allow the employee to "effectively appeal his discharge." *Leiphart v. North Carolina School of the Arts*, 80 N.C. App. 339, 351, 342 S.E.2d 914, 922-23, *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986).

The SPC made specific findings that plaintiff's dismissal was recommended, a pre-dismissal conference was scheduled and held and plaintiff attended the conference. Although there are no specific findings that the specific reasons for the dismissal were reviewed with plaintiff during the conference or that he was given an opportunity to

respond to the allegations, there is uncontradicted evidence of this in the record. *See Dockside Discotheque v. Board of Adjustment of Southern Pines,* 115 N.C. App. 303, 308, 444 S.E.2d 451, 454 (failure to make findings not fatal where uncontradicted record evidence would support requisite findings), *disc. rev. denied,* 338 N.C. 309, 451 S.E.2d 634 (1994). There are, however, no findings, nor is there evidence, that plaintiff received advance *written* notice of the pre-dismissal conference. This is not fatal in the present case, because it is clear that the purposes of the pre-dismissal conference were met, the plaintiff attended the conference, providing the clear inference that he had notice of the conference, and plaintiff has not argued, nor put forth any evidence, that any failure to receive advance written notice prejudiced him in any way. Accordingly, the conclusion that plaintiff's dismissal was procedurally correct is supported by the findings and the record.

## III

**[3]** Plaintiff argues that the finding that the reporting deadline was reasonable is not supported by substantial evidence. We disagree. Reasonable is defined as what is "[f]air, proper, just, moderate [or] suitable under the circumstances." *Black's Law Dictionary* 1265 (6th ed. 1990). The purpose of the rule and whether it serves its purpose are appropriate considerations in evaluating its reasonableness.

In this case the rule was promulgated for the purpose of providing timely written reports to district attorneys, to aid in prosecution, and to enhance the credibility of the testimony of SBI agents. The requirement that the dictation occur within five days of the activity serves the stated purpose. The rule also provided that for legitimate reasons, the five day requirement could be extended. This evidence is such that a reasonable mind might accept as adequate to support a determination that the deadline was reasonable under the circumstances.

## IV

**[4]** Plaintiff argues that his pre-dismissal conference did not meet the requirements of procedural due process.

It is not disputed that plaintiff had a property interest in his employment by the State which is protected by due process. *Bishop v. North Carolina Dept. of Human Resources,* 100 N.C. App. 175, 177, 394 S.E.2d 702, 703 (1990). To comply with due process requirements in dismissing a state employee, the agency must provide "oral or writ-

ten notice of the charges against [the employee], an explanation of the employer's evidence, and an opportunity[, which is meaningful in time and in manner,] to present his side of the story." *Id.*

In this case, there were findings, which are supported by substantial evidence, that plaintiff was given both oral and written notice of the charges against him and that he knew that the evidence consisted of reviews of his reports over a period of approximately four years. There is undisputed evidence in the record that plaintiff was given an opportunity to respond to the allegations during the 16 January meeting and that plaintiff submitted a memo on 17 January suggesting ways that plaintiff could improve his performance in the future. Plaintiff never disputed that prior to October 1990 he did not maintain his records in accord with SBI policy or meet the reporting deadline. Thus, plaintiff's 16 January meeting with Morgan met due process requirements.

V

[5] Plaintiff argues that the action of Justice in allowing House to resign and then rehiring House and allowing plaintiff to be dismissed denied him equal protection under the law.

Equal protection guards citizens from being treated differently under the same law from others who are similarly situated. *United States v. Falk*, 479 F.2d 616, 618-19 (7th Cir. 1973); *Walters v. Blair*, 120 N.C. App. 398, 400, 462 S.E.2d 232, 233-34 (1995). Disparate treatment, which occurs when an employer treats one employee less favorably than others, and disparate impact, which is a discriminatory result from some employment practice both violate equal protection. *North Carolina Dept. of Correction v. Hodge*, 99 N.C. App. 602, 611, 394 S.E.2d 285, 290 (1990); *Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 912 (4th Cir. 1989). Plaintiff argues that he was treated differently from House, thus raising the question of disparate treatment. *See Hodge*, 99 N.C. App. at 611, 394 S.E.2d at 290.

The undisputed evidence and findings of the SPC, however, reveal that both plaintiff and House were disciplined for not maintaining their files pursuant to SBI policy. Both plaintiff and House had pre-dismissal conferences and were given the option of resigning or being dismissed. Nothing in the evidence suggests that plaintiff was singled out by Morgan for dismissal or treated any differently than House. Plaintiff and House made different choices among the same that were provided to both. Furthermore, even assuming that plain-

tiff's argument raises the question of whether the practice of allowing he and House to choose between options resulted in House's being rehired and plaintiff not being rehired, there is no evidence that plaintiff has applied for a new position with Justice. Accordingly, the plaintiff's equal protection rights were not violated.

[6] The plaintiff argues that it was improper for Justice to base his dismissal on warnings which were more than two years old. We disagree.

Although an employee is entitled to receive disciplinary warnings prior to dismissal for unsatisfactory job performance, *Jones v. Department of Human Resources*, 300 N.C. 687, 691, 268 S.E.2d 500, 502 (1980); N.C. Admin. Code tit. 25, r. 1J.0605(b) (Oct. 1990) (amended Oct. 1995), there is no requirement that the warnings occur within some period of time prior to the dismissal. North Carolina Office of State Personnel, *State Personnel Manual*, § 9 at 8.2 (Feb. 1985) (amended Oct. 1995). Thus the SPC did not err in affirming the dismissal based on warnings that occurred two years prior to the actual dismissal, especially when the earlier violations, as here, related to the very reasons for which the employee was dismissed.

We have reviewed plaintiff's other assignments of error and overrule them.

Affirmed.

Judges MARTIN, Mark D., and McGEE concur.